UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

vs.                                              Case No.: 8:24-cr-00020-MSS-CPT

HEIDI RICHARDS,
Defendant.                              /

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)(3)(B)(v) AND 12(b)(2) FOR FAILURE TO STATE AN OFFENSE AND LACK OF JURISDICTION**

Defendant Heidi Richards, by and through undersigned counsel, moves pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B)(v) and 12(b)(2) to dismiss all counts of the Indictment for failure to state an offense and therefore also for lack of jurisdiction.[1] Defendant obtained leave of Court to file this motion. Docs 31-32.

## LEGAL STANDARD

In the Eleventh Circuit, "[t]he propriety of granting a motion to dismiss an indictment under [Fed.R.Crim.P.] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of

---

[1] "District courts lack jurisdiction when an indictment 'affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute.'" *United States v. Alameri,* 2018 WL 9814599, *2 (M.D. Fla., September 21, 2018) (Presnell, J.), *quoting United States v. Brown,* 752 F.3d 1344, 1354 (11th Cir. 2014).

1

law or involves determination of fact." *United States v. Korn,* 557 F.2d 1089, 1090 (5th Cir. 1977), *quoting United States v. Miller,* 491 F.2d 638, 647 (5th Cir. 1974). "If a question of law is involved, then consideration of the motion is generally proper." *Id.*

An indictment may be dismissed under Rule 12(b) "where there is an infirmity of law in the prosecution" "when the factual allegations in the indictment, viewed in the light most favorable to the government," are not "sufficient to charge the offense as a matter of law." *United States v. deVegter,* 198 F.3d 1324, 1326 (11th Cir. 1999).

"In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated." *United States v. Fitapelli,* 786 F.2d 1461, 1463 (11th Cir. 1986). "[A]s when confronted with a motion to dismiss a civil complaint for failure to state a claim, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated." *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1082 (5th Cir. 1978). For example, as the Supreme Court said in considering the sufficiency of a mail fraud indictment, "[w]hether the indictment sufficiently charged that the mails were so used [for the purpose of executing the charged fraudulent scheme] depends upon its allegations." *United States v. Sampson,* 371 U.S. 75, 77 (1962).

## SUMMARY DESCRIPTION OF THE CHARGES IN THE DEFENDANT'S INDICTMENT

Count One alleges a conspiracy "to commit an offense against the United States" in violation of 18 U.S.C. § 371, specifically "to traffic in illicit labels designed to be affixed to, enclose or accompany copies of [the Microsoft Windows 10 Pro] computer program" "in violation of 18 U.S.C. § 2318."[2] Doc 1 at 7-8. Under Section 2318(b)(2) and 18 U.S.C. § 2320(f)(5), the term "traffic" "means to transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of."

Count Two alleges that Ms. Richards "did knowingly traffic in illicit labels affixed to or designed to be affixed to, enclosed with, and accompanying a copy of a [Microsoft Windows 10 Pro] computer program" in violation of 18 U.S.C. § 2318.

---

[2] Section 2318(b)(4) defines "illicit label" as "mean[ing] a genuine certificate, licensing document, registration card, or similar labeling component – (A) that is used by the copyright owner to verify that a … copy of a computer program … is not counterfeit or infringing of any copyright; and (B) that is, without the authorization of the copyright owner – (i) distributed or intended for distribution not in connection with the copy … to which such labeling component was intended to be affixed by the respective copyright owner; or (ii) in connection with a genuine certificate or licensing document, knowingly falsified in order to designate a higher number of licensed users or copies than authorized by the copyright owner, unless that certificate or document is used by the copyright owner solely for the purpose of monitoring or tracking the copyright owner's distribution channel and not for the purpose of verifying that a copy … is noninfringing."

Counts Three and Four allege that Ms. Richards trafficked in "unauthorized access devices", specifically Microsoft product activation keys, in violation of 18 U.S.C. § 1029(a)(2) and § 1029(c)(1)(A)(i).

Count Five alleges that Ms. Richards possessed fifteen or more "unauthorized access devices", specifically Microsoft product activation keys, in violation of 18 U.S.C. § 1029(a)(3) and § 1029(c)(1)(A)(i).

## KEY FACTUAL ALLEGATIONS IN DEFENDANT'S INDICTMENT UNDERLYING THE CHARGED COUNTS

Counts One and Two are based on the central factual allegations in Indictment paragraphs 18b and 18c that Ms. Richards (1) purchased "standalone COAs [Certificates of Authenticity] and COA labels bearing product key codes for copies of copyrighted Microsoft computer programs" and then (2) "cause[d] the product key codes on the COA labels to be transcribed into spreadsheets, which product key codes were then sold to customers …."

Paragraph 19g makes clear that Ms. Richards allegedly obtained product keys "by email", while paragraph 19c makes clear that Ms. Richards allegedly sent spreadsheets containing product key codes by email to customers who had purchased these key codes.

Counts Three, Four and Five are based on factual allegations that Microsoft "product activation keys" constitute "unauthorized access devices" under 18 U.S.C. § 1029(a)(2) and (a)(3).

4

## ARGUMENT

**I.  Public Law 108-482, Title I, Section 103 provides that the illicit label provisions of 18 U.S.C. § 2318 "shall not be construed to apply to the electronic transmission" of labels or labeling components.  This bars prosecution in Counts One and Two of alleged trafficking in product key codes by email.**

Public Law 108-482, attached as **Exhibit 1**, amended 18 U.S.C. § 2318 in Title I by adding in Section 102 the "illicit label" prohibitions under which Defendant has been indicted.[3]

However, Section 103 of Public Law 108-482, titled "Other Rights Not Affected", also provided that "[t]he amendments made by this title … shall not be construed to apply – (A) in any case, to the electronic transmission of a genuine certificate, licensing document, registration card, similar labeling component, or documentation or packing described in paragraph (4) or (5) of section 2318(b) of title 18, United States Code, as amended by this title." Section 2318(b)(4) defines "illicit label" while Section 2318(b)(5) defines "documentation or packaging."  Section 103 of Public Law 108-482 now appears in Title 18 as a "statutory note" following 18 U.S.C. § 2318.  *See* **Exhibit 2.**[4]

---

[3] As shown in **Exhibit 1,** Public Law 108-482 is titled the Intellectual Property Protection and Courts Amendment Act of 2004, while Title I of that Act is titled the Anti-Counterfeiting Amendments Act of 2004.

[4] Both **Exhibit 3** and **Exhibit 4**, published by the House of Representatives Office of the Law Revision Counsel, explain that statutory notes have the same force and effect as provisions classified as a section of the United States Code.  As **Exhibit 3** explains, "[b]oth Code sections and statutory notes are based on provisions of Federal statutes.…  Placement of a provision as a statutory note .. has no effect on the validity

5

Section 103 of Public Law 108-482 precludes enforcing the "illicit label" provisions of 18 U.S.C. § 2318 as to "the electronic transmission" of illicit labels, including labeling components. This legislative intent is made crystal clear in the House Judiciary Committee Report on the Anti-Counterfeiting Amendments Act of 2004, attached as **Exhibit 5**, which explicitly states "[t]his legislation does not cover goods distributed or sold electronically." **Exhibit 5 at 7.**

Accordingly, Counts One and Two must be dismissed. Under Section 2318(b)(2), trafficking in illicit labels includes both importing or obtaining control of such labels, as well as transporting, transferring, and otherwise disposing of these labels. But Defendant Richards both "obtained control" of allegedly illicit labels in the form of the charged product key codes by "electronic transmission" in the form of emails (Indictment paragraph 19g) and then "transferred" and "disposed" of the product key codes charged as illicit labels by "electronic transmission" to her customers using email (Indictment

---

or legal force of the provision; that is, a provision set out as a statutory note has the same validity and legal force as a provision classified as a section of the Code." **Exhibit 3 at 2. Exhibit 4** makes the same point: "A provision of a Federal statute is the law whether the provision appears in the Code as section text or as a statutory note, and even when it does not appear in the Code at all. The fact that a provision is set out as a note is merely the result of an editorial decision and has no effect on its meaning or validity. Similarly, the appearance of a provision as a note should not be interpreted as a commentary on its relevance or importance, as many statutory notes provide crucial information about the Code sections they follow." **Exhibit 4 at 5-6.**

paragraph 19(c)).  By enacting Section 103 of Public Law 108-482, Congress created a safe harbor for these electronic transmissions which precludes prosecution of Counts One and Two and requires their dismissal.

The legislative history of Public Law 108-482, attached as **Exhibit 5**, provides even more broadly that the illicit label provisions added to Section 2318 in that act "do[] not cover goods … sold electronically." **Exhibit 5 at 7.**  Indictment paragraphs 19a, 19e, 19f, 19i, and 19l make clear that Ms. Richards communicated with the supplier of the charged product key codes (identified as "Unindicted Coconspirator-1, doing business as COMPANY A") by "electronic transmission" in the form of both emails and text messages to purchase the charged product key codes.  In addition, Indictment paragraphs 19h and 19m make clear that the charged product key codes were "sold electronically" because Ms. Richards paid Company A for those product key codes by interstate wire transfers.[5]

Prosecution of both the substantive violation of Section 2318's illicit label provision charged in Count Two and the conspiracy to traffic in illicit labels charge alleged in Count One are barred by the "electronic transmission" safe

---

[5] Indictment paragraph 19m alleges that Ms. Richards "sent wire transfers and payments" to Company A's bank accounts totaling approximately $5.148 million during a four and a half year period between July 2018 and January 2023. Ms. Richards's business Trinity Software Distribution, Inc. was located in the Middle District of Florida (Indictment paragraph 1), while Company A "was a Texas limited liability company that did business through the Internet and in Round Rock, Texas" (Indictment paragraph 3).

harbor established by Congress in Section 103 of Public Law 108-432.[6] Consequently, Counts One and Two must be dismissed for two reasons. First, the factual allegations in Counts One and Two, taking the allegations to be true, do not state the criminal offenses charged because Ms. Richards' conduct as alleged in those counts is not criminal under the "electronic transmission" safe harbor established by Congress in Section 103 of Public Law 108-432. Second, as Judge Presnell explained in the *Alameri* case cited in footnote 1 above, the Court therefore also lacks jurisdiction over Counts One and Two.

---

[6] The chapter on Section 2318 in the Department of Justice's *Prosecuting Intellectual Property Crimes* manual (4th ed.) attached as **Exhibit 6** suggests that the Government may argue in response to this motion that the safe harbor Congress established in Section 103 of Public Law 108-482 means only "that the unauthorized electronic distribution of labeling components that are purely electronic in their original or legitimate form, such as electronic signatures or watermarks, does not constitute criminal trafficking under § 2318 ...." **Exhibit 6 at page 291**. Such an argument would fail because Congress did not limit the "electronic transmission" safe harbor in Section 103 to only labeling components that are purely electronic in their original or legitimate form. Rather, the plain language of Section 103 demonstrates that this safe harbor applies to the "electronic transmission" of ***all*** "genuine certificate[s], licensing document[s], registration card[s], [and] similar labeling component[s], or documentation or packing." **Exhibit 1 at 4; Exhibit 2 at 5.** That is why the legislative history of Public Law 108-482 states clearly and broadly "[t]his legislation does not cover goods distributed or sold electronically", **Exhibit 5 at 7**, rather than "this legislation does not cover the distribution or sale of labels or labeling components that are purely electronic in their original or legitimate form."

**II.     In addition, Counts One and Two must be dismissed because the Indictment alleges only that Defendant trafficked in transcribed *copies* of labels in the form of product key codes, while Section 2318's trafficking in illicit labels offense prohibits only the transfer of "genuine" certificates, licensing documents, registration cards, or similar labeling components.**

Counts One and Two charge that Defendant conspired to traffic in illicit labels and trafficked in illicit labels by "caus[ing] the product key codes on the COA labels to be transcribed into spreadsheets, which product key codes were then sold to customers without the accompanying Microsoft software at prices significantly lower than Manufacturer's Suggested Retail Prices." Indictment paragraph 18c. For example, Ms. Richards received spreadsheets containing products keys from her supplier (Indictment paragraph 19g) and what Ms. Richards shipped to her customers by email were spreadsheets containing product key codes (Indictment paragraph 19c).

However, Section 2318's prohibition against trafficking in illicit labels makes it a crime only to traffic in "***genuine*** certificate[s], licensing document[s], registration card[s], or similar labeling component[s]." 18 U.S.C. § 2318(b)(4) (emphasis added). "[T]he plain language of § 2318 … clearly does *not* bar the possession of a *copy* of a genuine label." *Microsoft Corp. v. Pronet Cyber Technologies, Inc.,* 593 F.Supp.2d 876, 887 (E.D. Va. 2009) (emphasis in original). In *Pronet*, the defendant obtained "copies of so-called 'stand-alone' sheets of labels." *Id*. The *Pronet* court found that "obtain[ing] the *information*

9

on those labels and using that information in some improper manner other than label creation" would constitute "improper *use of that information,* [but] not unlawful trafficking in 'illicit' labels." *Id.* (emphasis in original).

The factual allegations in the Indictment, taken to be true, do ***not*** allege that Ms. Richards trafficked in "genuine" illicit labels, as required by Section 2318(b)(4). Rather, the Indictment clearly alleges that Ms. Richards trafficked only in transcribed ***copies*** of product key codes. That conduct, as the *Pronet* court found, does not constitute trafficking in illicit labels in violation of Section 2318. Consequently, Counts One and Two must be dismissed on this independent ground as well.

### III. Counts Three, Four and Five must be dismissed because the factual allegations in the Indictment do not allege any required access of an individual account.

Counts Three, Four and Five allege that Defendant Richards trafficked in and possessed "unauthorized access devices, that is, Microsoft product activation keys", in violation of 18 U.S.C. § 1029(a)(2) and (a)(3). According to Indictment paragraph 7, customers who purchased digital downloads of Microsoft software "then unlocked [the purchased software] through the entry of a product key code …." As further described in Indictment paragraph 10, "this product key code unlocks the functionality of the software associated with the license that the licensee has acquired." But "[i]f the product key code or serial number is rejected by the company servers, the software program will

not operate." Indictment paragraph 10. The Indictment makes clear that the product key codes charged as unauthorized access devices in Counts Three, Four and Five do not allow access to any individual accounts of any kind, but only permit particular Microsoft software to be "unlocked."

In *United States v. Brady,* 13 F.3d 334, 338-40 (10th Cir. 1993), the Tenth Circuit held that that cellular telephones altered to permit "free riding" on the cellular telephone system are ***not*** "means of account access" as required by Section 1029(e)(1) for those phones to qualify as "access devices." The Tenth Circuit held that "[u]nlike the unauthorized use of credit cards or long distance telephone access codes" which are access devices, a "tumbling" cellular telephone is not an access device because "the government is unable to show that the telephone accessed an identifiable account." *Id.* at 340. The *Brady* court held that "in order to fall within § 1029's definition of access device, the government must be able to establish access to a valid identifiable account for which a record of debits and credits is created and maintained, and which results in direct accounting losses." *Id.*

In *United States v. Morris,* 81 F.3d 131, 134 (11th Cir. 1996), the Eleventh Circuit said it "believe[d] that the *Brady* court's interpretation of § 1029(a)(4) as applicable only to those devices which access an individual account, such as a credit card or a long distance calling card, is the more sound …." The Eleventh Circuit observed that, "[a]s noted by the Tenth Circuit [in *Brady*]

11

expanding § 1029 beyond those instances in which an identifiable account is accessed would 'turn § 1029 into a general theft statute applicable whenever a company can document a loss through fraud.'" *Id., quoting Brady,* 12 F.3d at 340.

In *Synopsys, Inc. v. Ubiquiti Networks, Inc.,* 2017 WL 3485881, *13 (N.D. Cal., August 15, 2017), the court considered at the motion to dismiss stage whether counterfeit software license keys constituted access devices under Section 1029 sufficient to constitute a predicate act for a civil RICO claim. The court dismissed the Section 1029 predicate act from the RICO claim because the plaintiff "failed to allege sufficient facts describing the actual or functional 'account' [Defendant] allegedly accessed using the counterfeit access device and that [Defendant] access the account in order to 'obtain money, goods, services, or any other thing of value' as required" under Section 1029. *Id.* The court held that "[t]here needs to be, but are not, allegations about improper access to an account in Synopsys' EDA software delivery and access system." *Id.*

In this case, the Indictment fails to make the allegation - which is essential to charge an access device crime under Section 1029 - that any of the charged product key codes accessed any individual accounts. The factual allegations in Counts Three, Four and Five, taking these allegations to be true, therefore do not state the crimes charged. Accordingly, Counts Three, Four

12

and Five must be dismissed for both failure to state an offense and therefore also for lack of jurisdiction.

## **CONCLUSION**

The Court should dismiss all counts of the Indictment for the reasons stated above.

Dated: April 29, 2024

Respectfully submitted,

*/s/ Kevin Darken*
**TODD FOSTER**
Florida Bar No.: 0325198
tfoster@tfosterlawgroup.com
**KEVIN DARKEN**
Florida Bar No.: 90956
kdarken@tfosterlawgroup.com
**TODD FOSTER LAW GROUP, PLLC**
601 Bayshore Blvd. Suite 615
Tampa, FL 33606
Telephone: (813) 565-0600
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I filed the foregoing with the Clerk of Court for the Middle District of Florida on this 29th day of April 2024 by uploading it to the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Kevin Darken*
**KEVIN DARKEN**