UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUN 5 2024 AM 9:20
FILED - USDC - FLMD - TPA

UNITED STATES OF AMERICA

v.

CASE NO. 8:24-cr-20-MSS-CPT

HEIDI RICHARDS
    a/k/a Heidi Hastings
    a/k/a Heidi Shaffer
    a/k/a Heidi Williams

18 U.S.C. § 371 (Conspiracy)
18 U.S.C. § 2318 (Trafficking in Illicit Labels)
18 U.S.C. § 1029(a)(2) (Trafficking in Unauthorized Access Devices)
18 U.S.C. § 1029(a)(3) (Possession of Unauthorized Access Devices)
18 U.S.C. § 1956 (a)(1)(A)(i) (Promotional Money Laundering)

## SUPERSEDING INDICTMENT

The Grand Jury charges:

## COUNT ONE
### Conspiracy to Commit an Offense Against the United States

A.    **Introduction**

At all times material to this Superseding Indictment:

1.    HEIDI RICHARDS ("RICHARDS") owned TRINITY SOFTWARE DISTRIBUTION, INC. ("TRINITY"), an e-commerce business located in the Middle District of Florida that primarily sells software products. TRINITY previously conducted business as Trinity Liquidations, Inc., and RICHARDS has used various surnames, including Hastings, Shaffer, and Williams.

2. Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business located at One Microsoft Way, Redmond, Washington. Microsoft develops markets, distributes, and licenses computer software programs.

3. COMPANY A was a Texas limited liability company that did business through the Internet and in Round Rock, Texas. COMPANY A was engaged in the business of marketing, offering, copying, causing others to copy, and/or distributing purported Microsoft software and related components. COMPANY A is owned by Unindicted Coconspirator-1.

B. **Background on Illicitly Obtained Microsoft Software and Product Keys**

4. Microsoft, like other software developers, has critical interests in protecting its intellectual property. One way in which Microsoft protects its intellectual property is through the creation and registration of copyrights on their software products through the United States Copyright Office. Microsoft also registers trademarks for its products on the principal register of the United States Patent and Trademark Office ("USPTO"), which under United States trademark law is the primary registry of trademarks. For example, Microsoft has multiple registrations on the principal register of the USPTO of the mark "MICROSOFT."

5. Microsoft software programs have included, but are not limited to the following, many of which are or have been licensed as home, professional or student/academic versions: home, professional or student/academic versions of Microsoft Windows 10 Home, Microsoft Windows 10 Pro, Microsoft Office 365

Personal Retail, Microsoft Office 2019 Home and Student, and Microsoft Office 2021 Home and Business. Microsoft Office often comprises bundled versions of Microsoft Visio, Microsoft PowerPoint, Microsoft Access, Microsoft Excel, and Microsoft Word, among others.

6. Software that is distributed by Microsoft on physical media to its intended customers or authorized distributors (whether it is boxed for retail or accompanies a computer or computer hardware) will be distributed with a Certificate of Authenticity ("COA") label, documentation, or packaging designed to be affixed to, enclosing, or accompanying the physical media, or to a computer or computer hardware that contains the copy of the copyrighted computer program. These labels, documentation, and packaging are distributed along with copies of the copyrighted computer programs to demonstrate that the copy of the computer program is genuine, and to signal the authorized transfer of a license to the intended end user that its use is non-infringing.

7. Microsoft also distributes their software products using a variety of distribution channels. One method of distribution employed by Microsoft is via digital download. There are a limited number of sites where customers can legally purchase digital downloads of Microsoft software. Customers may purchase digital downloads of Microsoft software directly from these companies, or only through authorized retailers, or its authorized retail partners provide an Internet link that allows the customer to download a copy of the software, which is then unlocked through the entry of a product key code or serial number, as described below.

8. Software developers license the use of their copyrighted computer programs to an end user. The terms of the license will vary substantially based upon the context in which the software is to be used (for example, home, academic, or enterprise), the number of licenses being purchased, the geographic location of the purchaser, the number of activations allowed under the license, as well as other factors, and the associated price of the license may vary substantially based on these factors. Software licenses may also be issued in volume to manufacturers of computers and related computer hardware which allows those manufacturers to include the software with the computer or computer hardware at the time of purchase. When preinstalled on or included with a prebuilt computer or with computer hardware, these software licenses are called original equipment manufacturer ("OEM") licenses. RICHARDS, doing business as TRINITY, and COMPANY A are not direct Microsoft Original Equipment Manufacturers.

9. In order to ensure that a copy of a computer program may be appropriately installed and used in accordance with its license terms, software companies such as Microsoft have employed the use of a product key code or serial number to register and authenticate a software product upon installation. This product key code or serial number is a unique alphanumeric code that corresponds with a specific license and the distinctive associated terms and limitations of that license, such as the type of software program it was intended to be used with, nature of the license, and number of activations, among many other characteristics.

10. During the installation and activation process, the intended user's computer accesses Microsoft servers to register this software program and check the product key code relative to the distinctive characteristics associated with its specific license. Assuming it then passes this verification process, this product key code unlocks the functionality of the software associated with the license that the licensee has acquired. Depending upon the terms of the associated license, a specific product key code may allow a limited number of computers on which the licensee may unlock the software, or the use of this software may be otherwise temporally limited based on the nature of this license (if it is a trial license or subscription license). Microsoft may block the product key code or serial number if it has been used to activate too many copies of the software or has been identified as stolen. If the product key code or serial number is rejected by the company servers, the software program will not operate.

11. Product keys, in particular, may be illicitly obtained via fraud, including through vulnerabilities in Microsoft's supply chain. These product keys are identifiable as fraudulent based on indicators such as bulk distribution without accompanying COAs, sequential key codes (product keys are created, but not distributed, in sequential order), and sale prices far below the manufacturer's suggested retail price ("MSRP").

12. When engaging in the business of purchasing these bulk and illicit product keys, wholesalers and retailers are made aware of the badges of fraud making the authenticity of these product keys doubtful. First, unlike Microsoft's

distribution methods, these wholesalers distribute product keys in bulk via email, spreadsheet, and/or counterfeit COAs. Second, these product keys are sold at unrealistic discounts, and often from foreign individuals. Third, these retailers are frequently contacted by customers unable to activate purchased product keys. Similarly, retailers often test product keys and contact wholesalers about those that do not work. Fourth, many of the product keys obtained and distributed by these wholesalers and retailers were intended for specific uses such as academic or OEM (it is common for retailers to request specific types of keys from wholesalers based on the expected distribution channel, such as OEM keys for sales to system builders). Finally, companies like Microsoft make attempts to identify retailers selling illicitly obtained products and, once identified, send cease-and-desist ("C&D") letters describing the illegal conduct.

13. RICHARDS, doing business as TRINITY, and COMPANY A are not Microsoft Authorized Refurbishers ("MARs"). MARs are authorized to resell refurbisher licenses to downstream resellers, who are allowed to refurbish a device, affix the license to the device in question, and resell it. In order to distribute Microsoft refurbisher software to an end user, the MAR or downstream reseller must affix either a MAR COA label or a MAR Genuine Microsoft Label to the device on which the software is installed. Downstream resellers are not authorized to resell the COA labels on a "standalone basis," separate from a refurbished device installed with the software they were intended to authenticate.

14. The only authorized method of downstream distribution for a Windows OEM COA is affixed to the computer on which the software was installed or with the complete, sealed OEM package including the COA label and license. The labels may not be sold on a "standalone" basis separated from the software they were intended to authenticate.

15. In or around April 2017, Microsoft filed a civil complaint against COMPANY A in the U.S. District Court for the Western District of Texas, alleging, *inter alia*, that COMPANY A had sold unauthorized copies of Microsoft software via internet download and unauthorized product activation keys. Case No. 1:17-cv-00361-SS (W.D.T.X.).

16. In or around October 2017, the U.S. District Court for the Western District of Texas entered a stipulated permanent injunction, enjoining Company A from, *inter alia*, using any "false description which can or is likely to lead the trade or public or individuals to erroneously believe that any software, component, EULA, item, or thing has been . . . authorized by or for Microsoft, when such is in fact not true," and "assisting, aiding, or abetting any other person or business entity in engaging in or performing" the same.

### C. The Conspiracy

17. Beginning on an unknown date, but at least as early as on or about August 11, 2017, and continuing until the date of this Superseding Indictment, in the Middle District of Florida, and elsewhere, the defendant,

HEIDI RICHARDS

7

>a/k/a "Heidi Hastings,"
>a/k/a "Heidi Shaffer,"
>a/k/a "Heidi Williams,"

doing business as TRINITY, did knowingly conspire and agree with Unindicted Coconspirator-1, doing business as COMPANY A, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to traffic in illicit labels designed to be affixed to, enclose, or accompany copies of a computer program, to wit: Microsoft Windows 10 Pro, in violation of 18 U.S.C. § 2318.

### D. Manner and Means

18. The manner and means by which the coconspirators sought to accomplish the objects of the conspiracy included, among others:

   a. It was part of the conspiracy that RICHARDS would and did obtain unauthorized and illicit COAs and product activation key codes for Microsoft software programs from a variety of sources in and outside of the United States, including COMPANY A.

   b. It was further a part of the conspiracy that RICHARDS would and did purchase, sell, traffic, obtain, distribute, or otherwise dispose of standalone COAs and COA labels bearing product key codes for copies of copyrighted Microsoft computer programs, despite the prohibition against the sale of COA or COA labels apart from and not affixed to the computers, computer hardware, or copies of the computer programs they are intended to accompany.

   c. It was further a part of the conspiracy that RICHARDS would and did cause the product key codes on the COA labels to be transcribed into

spreadsheets, which product key codes were then sold to customers without the accompanying Microsoft software at prices significantly lower than Manufacturer's Suggested Retail Prices.

    d.    It was further a part of the conspiracy that, in order to further the objects of the conspiracy, coconspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

### E.   Overt Acts

19.    In furtherance of the conspiracy, and to effect the objects thereof, at least one of the coconspirators committed or caused to be committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

    a.    On or about August 11, 2017, Unindicted Coconspirator-1, doing business as COMPANY A, sent RICHARDS an email with the subject line, "OFFERS," and in which he asked RICHARDS if she could "use any of these," referring to various Microsoft products, including "100 pc" of "Windows 10 Pro OEM."

    b.    On or about July 24, 2018, RICHARDS, doing business as TRINITY, purchased from COMPANY A approximately 500 Microsoft Retail Windows 10 Pro and approximately 300 Windows 10 Home COA labels for approximately $22,100.

9

  c. On or about August 1, 2018, RICHARDS caused a TRINITY employee to send an email with the subject line "win 10 keys transcribed" with two spreadsheets attached—one with the file name "QTY 300 WIN 10 HOME KEYS 07262018" and the other with the file name "QTY 500 WIN 10 PRO KEYS 07262018."

  d. On or about August 6, 2018, RICHARDS caused a TRINITY employee to send approximately 20 of the 500 Windows 10 Pro product key codes that RICHARDS had purchased on July 24, 2018, from COMPANY A, to a customer in the United Kingdom.

  e. On or about May 10, 2022, Unindicted Coconspirator-1, doing business as COMPANY A, sent RICHARDS an email with the subject line, "OFFER: Office 2019 Home Student OEM," and in which he stated, "These are like the Windows 10 you've been buying with a scratch-off," and "~1000 pcs Office 2019 Home Student OEM $20.00. I can transcribe them if needed as well."

  f. On or about May 16, 2022, Unindicted Coconspirator-1, doing business as COMPANY A, sent RICHARDS by email "Invoice 3837" for the purchase of 200 units of Microsoft Office 2019 Home and Business OEM at $80 per unit, 100 units of Microsoft Office 2019 Home Student Retail at $35 per unit, and 100 units of Microsoft Office 2021 Home Student Retail at $45 per unit, for a total price of $24,000.

  g. On or about May 16, 2022, Unindicted Coconspirator-1, doing business as COMPANY A, sent RICHARDS by email an Excel spreadsheet titled

"Inv 3837 Trinity Software" that contained approximately 200 Microsoft Office 2019 Home Business OEM product keys, 100 Microsoft Office 2019 Home Student Retail product keys, and 100 Microsoft Office 2021 Home Student Retail product keys.

 h. On or about May 26, 2022, RICHARDS, doing business as TRINITY, using accounts maintained in the state of Florida, sent COMPANY A a wire transfer and payment of approximately $41,824.

 i. On or about November 30, 2022, Unindicted Coconspirator-1, doing business as COMPANY A, sent RICHARDS a text message, in which he stated that he had "31k units" and that he can "send out that 10k tomorrow and hold however many you want up to 21k."

 j. On or about December 5, 2022, RICHARDS, doing business as TRINITY, purchased from COMPANY A approximately 4,988 Microsoft Windows 10 Pro COA labels for approximately $99,760.

 k. On or about December 5, 2022, RICHARDS, doing business as TRINITY, purchased from COMPANY A approximately 5,000 additional Microsoft Windows 10 Pro COA labels for approximately $100,000.

 l. On or about December 5, 2022, Unindicted Coconspirator-1, doing business as COMPANY A, sent RICHARDS a text message, in which he stated, "I am sending that package out for priority delivery," describing it as "Precious cargo."

 m. Between on or about July 2, 2018, and on or about January 17, 2023, using accounts maintained in the state of Florida and on behalf of TRINITY,

RICHARDS sent wire transfers and payments totaling $5,148,181.50 to bank accounts maintained by COMPANY A to pay for and acquire software products.

All in violation of 18 U.S.C. § 371.

## COUNT TWO
### Trafficking in Illicit Labels

1. Paragraphs 1 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. Beginning on or about December 5, 2022, and continuing through on or about March 8, 2023, in the Middle District of Florida, and elsewhere, the defendant,

> HEIDI RICHARDS
> a/k/a "Heidi Hastings,"
> a/k/a "Heidi Shaffer,"
> a/k/a "Heidi Williams,"

did knowingly traffic in illicit labels affixed to or designed to be affixed to, enclosed with, and accompanying a copy of a computer program, to wit, Microsoft Windows 10 Pro.

In violation of 18 U.S.C. § 2318.

## COUNT THREE
### Trafficking in Unauthorized Access Devices

1. Paragraphs 1 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. From on or about January 1, 2020, through on or about December 31, 2020, in the Middle District of Florida, and elsewhere, the defendant,

HEIDI RICHARDS<br>
a/k/a "Heidi Hastings,"<br>
a/k/a "Heidi Shaffer,"<br>
a/k/a "Heidi Williams,"

knowingly and with intent to defraud, trafficked in unauthorized access devices, that is, Microsoft product activation keys, and by such conduct obtained a thing of value totaling $1,000 or more, and such trafficking affected interstate commerce.

In violation of 18 U.S.C. § 1029(a)(2) and (c)(1)(A)(i).

## COUNT FOUR
### Trafficking in Unauthorized Access Devices

1. Paragraphs 1 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. From on or about January 1, 2022, through on or about December 31, 2022, in the Middle District of Florida, and elsewhere, the defendant,

HEIDI RICHARDS<br>
a/k/a "Heidi Hastings,"<br>
a/k/a "Heidi Shaffer,"<br>
a/k/a "Heidi Williams,"

knowingly and with intent to defraud, trafficked in unauthorized access devices, that is, Microsoft product activation keys, and by such conduct obtained a thing of value totaling $1,000 or more, and such trafficking affected interstate commerce.

In violation of 18 U.S.C. § 1029(a)(2) and (c)(1)(A)(i).

## COUNT FIVE
### Possession of Fifteen or More Unauthorized Access Devices

1. Paragraphs 1 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. On or about March 8, 2023, in the Middle District of Florida, and elsewhere, the defendant,

HEIDI RICHARDS
a/k/a "Heidi Hastings,"
a/k/a "Heidi Shaffer,"
a/k/a "Heidi Williams,"

knowingly and with intent to defraud possessed 15 or more unauthorized access devices, that is, Microsoft product activation keys, and such possession affected interstate commerce.

In violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(a)(i).

## COUNT SIX
### Money Laundering to Promote the Carrying on of a Specified Unlawful Activity

1. Paragraphs 1 through 16 of Count 1 of this Superseding Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. On or about May 20, 2022, in the Middle District of Florida, the defendant,

HEIDI RICHARDS
a/k/a "Heidi Hastings,"
a/k/a "Heidi Shaffer,"
a/k/a "Heidi Williams,"

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, that is, a wire transfer, which involved the proceeds of a specified unlawful activity, that is, trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2), with the intent to promote the carrying on of

specified unlawful activity, that is, trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2), and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2.

## FORFEITURE

1. The allegations contained in Counts One through Six are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 982(a)(1), 982(a)(2)(B), 1029(c)(1)(C) and 2323.

2. Upon a conviction of a violation of 18 U.S.C. §§ 2318, or a conspiracy to violate 18 U.S.C. § 2318 (18 U.S.C. § 371), the defendant,

> HEIDI RICHARDS
> a/k/a "Heidi Hastings,"
> a/k/a "Heidi Shaffer,"
> a/k/a "Heidi Williams,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 2323, all of her right, title, and interest in:

    a. any article, the making or trafficking of, which is prohibited under section 2318 of this title;

    b. any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offense; and

    c. any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of such offense.

3. Upon conviction of a violation of 18 U.S.C. § 1029, the defendant,

HEIDI RICHARDS
a/k/a "Heidi Hastings,"
a/k/a "Heidi Shaffer,"
a/k/a "Heidi Williams,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds the person obtained, directly or indirectly, as a result of such violation, and, pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property used or intended to be used to commit the offense.

4. Upon conviction of a violation of 18 U.S.C. § 1956, the defendant,

HEIDI RICHARDS
a/k/a "Heidi Hastings,"
a/k/a "Heidi Shaffer,"
a/k/a "Heidi Williams,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

5. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of at least $242,000, which represents the proceeds obtained from, and amount involved in, the offenses.

6. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value;

e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. §§ 982(b)(1), 1029(c)(2) and 2323(b).

A TRUE BILL,



Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Risha Asokan
Assistant United States Attorney

By: _____
Jared S. Hosid
Trial Attorney
Department of Justice, Criminal Division

By: _____
Daniel J. Marcet
Assistant United States Attorney
Chief, National Security Section

17

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Tampa Division

THE UNITED STATES OF AMERICA

vs.

HEIDI RICHARDS
a/k/a Heidi Hastings
a/k/a Heidi Shaffer
a/k/a Heidi Williams

**SUPERSEDING INDICTMENT**

Violations: 18 U.S.C. §§ 371, 2318, 1029(a)(2), 1029(a)(3), and 1956 (a)(1)(A)(i)

A true bill,

_____
Foreperson

Filed in open court this 4th day

of June 2024.

_____   KARINA NIEVES
Clerk

Bail $_____

GPO 863 525